U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED
APR 04 2006
ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| MITCH WALKER | DOCKET NO. 05-CV-0737 |
| VERSUS | JUDGE DRELL |
| COMMISSIONER U.S. SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Mitch Walker ("Walker") filed this lawsuit seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his claim for social security benefits. The issue to be decided is whether there is substantial evidence in the record to support the finding of the Administrative Law Judge ("ALJ") that Walker is not disabled.

Walker protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments on May 23, 2001, alleging a disability onset date of April 1, 2001, due to diabetes, poor circulation in the feet, poor eye sight, heart problems, anxiety, and depression. (R. 49-52, 68-77, 248-251). The claim was denied initially and on reconsideration, and a request for hearing was timely filed. A hearing was held before an Administrative Law Judge ("ALJ") on August 5, 2003 (R. 253-292), and the ALJ ultimately found that Walker was not disabled (R. 22). Walker requested review of the ALJ's decision by the Appeals Council, and the request was denied.

To qualify for disability insurance benefits, a claimant must

meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## SCOPE OF REVIEW

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C.

§405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. Crouchet v. Sullivan, 885 F.2d 202, 204 (5th Cir. 1989). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).

## ISSUES

Walker raises the following issues for appellate review:

1. Whether the ALJ erred in determining the severity of Walker's impairments.

2. Whether the ALJ failed to consider the combination of Walker's impairments.

3. Whether the ALJ erred in determining Walker's residual functional capacity.

## Summary of Pertinent Facts

Walker was born in 1959. (R. 258.) He attended school through the tenth grade (R. 75), and he has past relevant work experience as a construction worker and derrick man. (R. 70, 283-284.) Walker claims that he became disabled on April 1, 2001.

Walker reported to Rapides Regional Medical Center on April 9, 2001, where he was treated for diabetic ketoacidosis, diabetic mellitus, and cellulitis of the right toe with septicemia. (R. 104-105.) He was discharged on April 12, 2001.

Walker was treated at Alexandria Eye Associates by Dr. Michael A. Redmond on August 13, 2001. Dr. Redmond noted that Walker had macular edema related to his diabetes. Vision was correctable to 20/25 and 20/20. He underwent a focal macular laser procedure, and his vision has maintained in the 20/30 to 20/40 range. (R. 106.) Dr. Redmond found no evidence of disability based on Walker's acuities.

Walker was treated by Dr. Devinder Verma, an internist, from June 16, 2000, through October 2, 2001. (R. 108-123.) During that

time period, Dr. Devinder treated Walker for diabetes, a rash, stomach pain, blisters/callouses on his toe, headache, nausea, back pain, depression, leg pain, and diabetes. When he first saw Dr. Verma, Walker was smoking two packs of cigarettes a day, drinking one pot of coffee per day, and drinking six beers each day. (R. 123.) Dr. Verma's assessment on October 2, 2001, was that Walker suffered from insulin dependant diabetes mellitus, osteoarthritis, peripheral vascular disease involving lower extremities secondary to diabetes, diabetic neuropathy involving lower extremities, diabetic retinopathy causing decrease in vision, degenerative joint disease involving various joints, and anxiety and depression. (R. 109.)

James Quillin, Ph.D., performed a consultative examination on December 5, 2001. He noted that Walker had a history of alcohol abuse, but claimed to have quit drinking one year ago. Dr. Quillin issued a diagnosis of major depression, moderate and alcohol dependence in reported sustained remission. (R. 128-129.) Dr. Quillin suspected borderline intellectual functioning, but advised that testing would need to be conducted to determine if that was the case. (R. 129.)

On December 20, 2001, Walker underwent a heart catheterization, which revealed coronary artery disease and normal left ventricular function. (R. 134.) Walker performed an exercise test, as well. The test was stopped because the "patient not able to walk very well." (R. 137.) No chest pain was reported, and

Walker experienced no shortness of breath. (R. 137.)

A mental residual functional capacity ("RFC") test was conducted on February 13, 2002. (R. 140-142.) The examiner found moderate functional limitations in Walker's activities of daily living and maintaining concentration, persistence, or pace. (R. 155.)

On February 26, 2002, Brenda Thomas, who is not a medical consultant (R. 166), conducted a Physical RFC assessment (R. 159-166). She determined that Walker could lift a maximum of twenty pounds occasionally and ten pounds frequently, could stand and/or walk at least two hours in an eight hour day, could sit for about six hours in an eight hour day, and had limited push/pull ability in his lower extremities. He could occasionally climb, balance, stoop, kneel, crouch, and crawl. (R. 161.) He was limited in his ability to reach with his right arm due to degenerative joint disease.

Walker was admitted to CHRISTUS St. Frances Cabrini Hospital on March 26, 2003, for a coronary artery bypass. Dr. John Gouldman noted that Walker had "a long history of noncompliance regarding his diet and his diabetes." (R. 168.) The doctor warned Walker that if his sugars remained at the current level, he would continue to have worsening heart disease, possible amputations, possible renal failure requiring hemodialysis, possible strokes, and death. (R. 173.) Walker would not speak with the nutritionist in the hospital. (R. 173.) Walker also reported that he smoked two to

three packs of cigarettes a day. (R. 173.) Walker underwent a "coronary artery bypass grafting x2, off-pump, with left internal mammary artery to his LAD and saphenous vein graft to his diagonal artery." (R. 168.)

A chest x-ray on April 29, 2003, indicated improving left lower lobe pleural and parenchymal changes. (R. 181.)

Dr. Gary Jones treated Walker post surgery. The doctor noted that Walker's sternum was stable and his incision was healing well. His heart had a regular rate and rhythm. Walker failed to show for an appointment with Dr. Jones in May 2003. On June 25, 2003, Dr. Jones found that Walker had done very well post bypass surgery, with no major problems. His cardiovascular exam showed no signs of infection or inflamation. (R. 189.)

On June 17, 2002, Walker sought treatment from Dr. Charles Ugokwe, a neurologist. The doctor's impression was diabetic neuropathy, autonomic dysfunction secondary to diabetes, and depression. (R. 206.) On October 17, 2002, April 25, 2003, and May 28, 2003, Dr. Ugokwe examined Walker due to complaints of pain in the lower extremities. The doctor opined that Walker had diabetic neuropathy and autonomic dysfunction secondary to diabetes. (R. 199-203.) There was no impression of depression noted.

Walker has multiple calluses on both feet with multiple abscesses. (R. 108-126.) He has had numerous debridements of these callouses, undergoing as many as ten procedures performed in

a fourteen month period. (R. 223-229.) Dr. Devinder Verma also noted that Walker had even used a knife at home to whittle down the calluses. (R. 230.) Walker testified that he worked offshore and in construction until "my feet got to where I couldn't work." (R. 260.)

Dr. Tawfik Benghozi, a psychiatrist, treated Walker from July 2002 through July 2003. (R. 233-244.) At his first visit, Dr. Benghozi diagnosed depression, panic disorder, alcohol abuse in remission, and post traumatic stress disorder. (R. 245.) Dr. Benghozi prescribed Celexa, Xanax, and Zyprexa. Walker only had the Xanax prescription filled. (R. 242.) Walker claimed that he could not afford the other medications, so he was provided free samples at his next visit. In August 2002, Dr. Benghozi instructed Walker to decrease the Xanax and to take the Celexa and Zyprexa. (R. 240.) In October 2002, Walker reported to Dr. Benghozi that he was not taking any of his medication, and had not taken it for a month. (R. 239.) The doctor prescribed Lexapro and Remeron. (R. 239.) In December 2002, Walker reported to the doctor that he was taking his medication, but was still getting angry without reason and still having problems sleeping. (R. 238.) Walker failed to show for an appointment on May 5, 2003 (R. 236), but did report for his appointment on May 13, 2003. Dr. Benghozi instructed Walker to bring all of his medications to the next visit on June 10, 2003. Walker was a no-show for that appointment. (R. 235.) On June 17, Walker was given more samples of his medications. (R. 234.) By

July 2003, Walker was doing better and appeared calm and cooperative. (R. 233.)

Issue No. 1: Whether the ALJ erred in determining the severity of Walker's impairments.

The ALJ determined that Walker suffered from the following severe impairments: diabetes resulting in neuropathy and retinopathy, coronary artery disease (status post-coronary bypass times two), and depression. (R. 17.) Walker argues that the evidence also established that he suffered from peripheral vascular disease in the lower extremities secondary to diabetes, diabetic macular edema for which he underwent laser treatment in both eyes, osteoarthritis, and degenerative joint disease. (Doc. #10, p.3.)

At Step 2, the ALJ is required to determine whether the claimant has a severe physical or mental impairment or combination of impairments. 20 C.F.R. 404.1520. If there is no severe impairment or combination of impairments, then the claim is denied. If there is one severe impairment, or if there are multiple impairments that, when combined, are severe, then the ALJ moves to Step 3 of the Five Step Sequential Evaluation Process. Walker's argument that the ALJ erred at Step 2 by failing to consider whether a combination of his impairments lead to a finding of disabled is misplaced. The ALJ's only decision at Step 2 is whether there are *any* severe impairments whatsoever. If not, then the inquiry ends. If so, as in this case, then the ALJ moves on to Step 3. The ALJ found that Walker had severe impairments, and she

properly moved on with the inquiry.

Issue No. 2:   Whether the ALJ failed to consider the combination of Walker's impairments.

Next, Walker claims that the ALJ failed, at Step 3, to consider whether the combination of Walker's impairments met or medically equaled a listing. At Step 3 of the 5 Step Sequential Evaluation Process, the ALJ determines whether the impairment(s) meets or medically equals one of the impairments in the Listing of Impairments. If the claimant has such an impairment, and that impairment(s) meets the duration requirement[1], then the claimant is found disabled, without considering education, age, and work experience. 20 C.F.R. 404.1520.

In her decision, the ALJ found that "[t]he medical evidence indicates that the claimant suffers with diabetes resulting in neuropathy and retinopathy, coronary artery disease.... and depression." (R. 17.) The ALJ found that the combination of *those* impairments were not severe enough to meet or medically equal a listing. (R. 17.) However, Walker argues, and the ALJ noted elsewhere in her decision, that the medical evidence also establishes that Walker has diabetes, is insulin dependant, has macular edema as a result of the diabetes, suffers from poor circulation in the feet, has peripheral vascular disease involving

---

[1] The duration requirement is "an impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. 404.1520.

the lower extremities secondary to diabetes, as well as degenerative joint disease, coronary artery disease, anxiety, and depression. (R. 14.)

When a claimant has multiple impairments, the Commissioner is required to consider the combined effect of all of the impairments without regard to whether any such impairment, if considered separately, would be of such severity. See Jones v. Barnhart, 372 F. Supp. 2d 989, 997-998 (D. Tex. 2005), citing 42 U.S.C. § 423(d)(2)(B); Loza v. Apfel, 219 F.3d 378, 393 (5th Cir. 2000). Here, the ALJ should have considered whether **all** of Walker's impairments met or medically equaled a listing. The ALJ erred in only considering Walker's diabetes, neuropathy/retinopathy, coronary artery disease, and depression.

Because the ALJ erred at Step 3 of the 5 Step Sequential Evaluation, the case should be remanded to the Commissioner for a proper Step 3 determination considering all of Walker's impairments.

Issue No. 3: Whether the ALJ erred in determining Walker's residual functional capacity.

Finally, Walker argues that the ALJ erred in determining that Walker had the residual functional capacity ("RFC") to occasionally climb, balance, stoop, kneel, crouch, crawl, as well as occasionally reach over-head with his right upper extremity." (R. 19.) Further, the ALJ determined that Walker was capable of

performing simple one-two-three step tasks and should avoid excessive job stress. (R. 19.) Accordingly, the ALJ found that Walker retained the RFC for sedentary work.

First, the ALJ found that Walker's depression resulted in "moderate restrictions in daily living and in concentration, persistence, and pace, as well as mild difficulties in maintaining social functioning." (R. 17.) Dr. Quillin opined that Walker had "spotty cognitive function," a moderate level of depression, and some questionable hallucinatory experiences. Dr. Qullin's diagnosis was Major Depression - Moderate, Alcohol Dependance in Remission, and Borderline Intellectual Functioning. (R. 128-129.) The doctor determined that Walker's depression was a complication that would limit his capacity to return to a more functional status. (R. 128-129.) Walker points out that Dr. Quillin was not asked to complete a medical source statement. As noted herein, Dr. Benghozi's diagnoses were depression, panic disorder, alcohol abuse in remission, and post traumatic stress disorder. Furthermore, Walker testified at the hearing that he was a special education student in school, and quit school at the age of sixteen. (R. 258.)

As for Walker's physical limitations, the record establishes that Walker suffers from chronic foot ulcers that are resistant to treatment, "severe degenerative joint disease," osteoarthritis affecting various joints, vascular disease involving lower extremities secondary to diabetes, neuropathy involving lower

extremities, and a decrease in vision.

The ALJ has the responsibility for deciding a claimant's residual functional capacity. 20 C.F.R. § 404.1546. The ALJ must perform a "function-by-function" assessment of the claimant's ability to engage in work-related activities when making his RFC determination. SSR 96-8p. The ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant or others. 20 C.F.R. § 404.1545(a). Moreover, the ALJ must specify the evidentiary basis for his RFC determination. SSR 96-8p. Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).

Walker testified that he had pain and loss of feeling in his legs, problems with his shoulder, difficulties with his vision, back pain, and depression. (R. 265-269.) This testimony is consistent with the medical records discussed herein. However, the ALJ summarily stated that there were discrepancies between Walker's assertions and the documentary reports. (R. 19.) The ALJ failed to discuss which reports contradicted Walker's testimony. Further, the ALJ failed to consider the effect of Walker's medications (approximately fourteen in all) and frequent doctor appointments on Walker's ability to maintain employment.

## Conclusion

For the forgoing reasons, the Court finds that there is insufficient evidence in the record to support the Commissioner's

decision. As noted herein, the case should be remanded for the ALJ to consider of all of Walker's impairments in making a determination at Step 3. Further, should the ALJ still find that Walker does not meet or medically equal a listing, the ALJ should identify the contradictions in Walker's testimony and the medical evidence, and also consider the effect of Walker's medications on his ability to maintain employment.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the case be REMANDED to the Commissioner for further proceedings consistent with this opinion.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM**

**ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 3rd day of April, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE